**WO**                                                                                                                        JDN

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Joshua DeRoche,                )   No. CV 06-1428-PHX-MHM (MEA)
                               )
    Plaintiff,         )   **ORDER**
                               )
vs.                            )
                               )
Jill Kennedy, et al.,          )
                               )
    Defendants.        )
_____)

Before the Court are three motions for injunctive relief filed by Plaintiff (Doc. #13-15). The Court will grant Plaintiff's second motion to the extent that he seeks to dismiss a defendant but will otherwise deny it. And the Court will deny Plaintiff's two other motions.

**I. Background**

Plaintiff filed this civil rights action against the following officials at the Maricopa County Jail: (1) Medical Director Jill Kennedy; (2) Dr. M. Bargan; (3) Dr. Wandry; (4) Nurse Pamela Barr; (5) Jason Lane; and (6) Unknown Doe Defendants (Doc. #8). Plaintiff alleged that Defendants' failure to provide treatment for his Hepatitis C for the last three years has caused him further liver damage and deterioration to his health. He contended that Defendants' failure to provide treatment constituted deliberate indifference towards his serious medical needs and increased his risk for developing advanced stage hepatitis. The Court screened the Amended Complaint and ordered Defendants to Answer (Doc. #11). Plaintiff then filed three motions for injunctive relief (Doc. ##13-15).

In his first motion, Plaintiff alleges that he is experiencing chest pain that is "virtually unbearable" and that his discomfort impairs his ability to sleep (Doc. #13). He states that he

has suffered this intense chest pain constantly for the 13 days prior to the filing of his motion (Id. at 2). He further alleges that he is suffering from nervousness, irregular heartbeat, and hypertension (Id. at 2-3). Plaintiff fears that he is facing imminent physical harm such as stroke, cardiac arrest, or heart failure. He seeks immediate relief in the form of proper medical assessments, most of which are inexpensive. Specifically, he requests an electrocardiogram test (EKG), a high sensitivity C-reactive protein test and any other test that may be useful to diagnose and treat cardiovascular disease, a standard diabetes test, and a Hepatitis C pretreatment evaluation. In his attached memorandum, Plaintiff notes that he is scheduled for a medical appointment, but he contends that the medical services provided have been, and will continue to be, insufficient to address his emergency medical situation (Id., Attach. at 2).

In his second motion, Plaintiff alleges that Correctional Health Services has merely studied his disease progression over the last few years and that Defendants have retaliated against him in a "life-threatening" manner for filing medical grievances (Doc. #14). He does not describe the alleged retaliation. Plaintiff asserts that his symptoms of heart disease and high blood pressure are covered-up and that Defendants falsify Plaintiff's test results. Plaintiff goes on to allege that he is receiving medical care that is so inappropriate he cannot describe it in public court documents. For relief, Plaintiff requests that he be placed in the custody of the U.S. Marshals and that the Court order T-Gen, a biogenic research facility, to address Plaintiff's health problems (Id. at 2-3). He also asks that the Court issue an order preventing the county from transmitting Plaintiff's voice via hypersonic sound (Id. at 3). Plaintiff requests that Defendants be prohibited from defaming Plaintiff by labeling him as a "crazy person," and he demands justice should he become missing or dead. Finally, Plaintiff moves to voluntarily dismiss Defendant Wandry from this action (Id. at 4).

Plaintiff's third request for injunctive relief is entitled "Motion for Independent Cardiovascular Risk Assessment" (Doc. #15). Plaintiff alleges that he received an EKG on December 13, 2006, and was subsequently transported to the Maricopa Medical Center (MMC) (Id. at 1-2). Plaintiff states that his blood was taken, although it took six punctures

- 2 -

1    with an IV needle to withdraw his blood and his blood vials were mis-labeled with other
2    patients' names (Id. at 23).  Another EKG was performed and the results indicated that he
3    was "fine" (Id. at 3).  For relief, Plaintiff requests that the Court question the validity of all
4    testing done by the county and order a basic cardiac risk assessment "independent of county
5    influence or control" (Id.).

6        Since filing his motions for injunctive relief, Plaintiff has submitted a Notice of
7    Change of Address indicating his transfer from the jail to the Arizona State Hospital (Doc.
8    #17).  Plaintiff states that pursuant to an order from the State court, he has been committed
9    to the state hospital for up to 30 days for mental health evaluation and treatment (Id.; see
10   Ariz. Rev. Stat. § 13-502(B)).

11   **II.  Preliminary Injunction**

12       The purpose of preliminary injunctive relief is to preserve the status quo or to prevent
13   irreparable injury pending the resolution of the underlying claim.  Sierra On-Line, Inc. v.
14   Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  A preliminary injunction is an
15   extraordinary and drastic remedy and will not be granted absent a clear showing of likely
16   success in the underlying claim and possible irreparable injury.  See Mazurek v. Armstrong,
17   520 U.S. 968, 972 (1997) (per curiam); Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th
18   Cir. 2005).  Alternately, a party may show that serious questions going to the merits were
19   raised and the balance of hardships tips sharply in his favor.  Warsoldier, 418 F.3d at 994.
20   These two formulations operate as points on a sliding scale, whereby a stronger showing of
21   irreparable harm can compensate for a weaker likelihood of success.  See United States v.
22   Nutri-cology, Inc., 982 F.2d 394, 397 (9th Cir. 1992) (citing Oakland Tribune, Inc. v.
23   Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  Under either test, the
24   movant must demonstrate a significant threat of irreparable injury.  AGCC v. Coalition for
25   Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

26       Although Plaintiff raises serious questions in his first request for injunctive relief,
27   Plaintiff is no longer housed in the jail where his claims arose and from where he filed his
28   motions.  When a prisoner seeks injunctive relief concerning the facility where he is

1  incarcerated, his claims for such relief become moot when he is no longer subjected to those
2  conditions. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d
3  517, 519 (9th Cir. 1991). Plaintiff's transfer to the Arizona State Hospital effectively moots
4  his request for injunctive relief. But Plaintiff stated that he will return to the jail on or about
5  March 1, 2007 (Doc. #17 at1). Transfers may not render a request for injunctive relief moot
6  if there is a reasonable expectation of being transferred back. See Preiser v. Newkirk, 422
7  U.S. 395, 402-403 (1975); Johnson, 948 F.2d at 519. There is no indication that Plaintiff will
8  be denied medical care at the Arizona State Hospital. Thus, it cannot be determined whether
9  Plaintiff's need for the requested injunctive relief will exist if and when he returns to the jail.
10 More importantly, at this juncture the Complaint has not been served on Defendants, nor
11 have they appeared in this action. Because the Court does not have jurisdiction over any of
12 the defendants, and because the need for injunctive relief upon return to the jail is
13 speculative, Plaintiff's first motion will be denied without prejudice to refiling.

14        As to Plaintiff's second request for an injunction (Doc. #14), his assertion that the
15 allegations concerning his medical care "are not appropriate to mention on public record" is
16 insufficient to meet the required showing for a preliminary injunction. More importantly,
17 Plaintiff failed to allege the significant threat of irreparable injury. The requests for relief
18 relating to a biogenic research facility and a bar on the transmission of Plaintiff's voice are
19 unwarranted. Plaintiff's second motion will therefore be granted only to the extent that he
20 seeks to dismiss Dr. Wandry as a defendant.

21        Plaintiff's Motion for Independent Cardiovascular Risk Assessment (Doc. #15) also
22 fails to meet the requirements for injunctive relief. Plaintiff merely sets forth additional
23 allegations against Defendants and hospital personnel regarding his medical care. His
24 requests for relief – that the Court question the validity of future tests, and "at a future time"
25 order a cardiac assessment – do not demonstrate an immediate threat of injury. Moreover,
26 as discussed *supra*, Plaintiff's transfer to another facility renders his request injunctive relief
27 moot at this time, and the Court lacks jurisdiction over Defendants. Plaintiff's third motion
28 will therefore be denied.

1 **IT IS ORDERED**:

2     (1) Plaintiff's Motion for a Preliminary Injunction (Doc. #13) is **denied** without
3 prejudice.

4     (2) Plaintiff's Motion for Preliminary Injunctive Relief (Doc. #14) is **granted** in part
5 and **denied** in part. The motion is **granted** to the extent that Dr. Wandry is dismissed as a
6 Defendant in this action. The motion is otherwise **denied.**

7     (3) Plaintiff's Motion for Independent Cardiovascular Risk Assessment (Doc. #15)
8 is **denied.**

9     DATED this 12th day of February, 2007.

_____
Mary H. Murguia
United States District Judge