**WO**                                                                                           JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua DeRoche, ) | No. CV 06-1428-PHX-MHM (MEA) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Lindy Funkhouse, et al., ) | |
| Defendants. ) | |

Plaintiff Joshua DeRoche, formerly an inmate in the Maricopa County Jail, filed this civil rights action under 42 U.S.C. § 1983 against various officials at the Maricopa County Fourth Avenue Jail (Doc. #69). Before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. #37) and Motion to Strike Defendants' Allegation of Failure to Exhaust Administrative Remedies (Doc. #38), and Defendants' Cross-Motion to Dismiss (Doc. #40). The Court will deny all three motions.

**I.     Second Amended Complaint**

Plaintiff's claim arose during his confinement at the Maricopa County Jail between December 2003 and August 2005 (Doc. #69). He alleged that the following Defendants violated his Fourteenth Amendment rights: (1) Medical Director Jill Kennedy; (2) Dr. M. Bargan; (3) Nurse Pamela Barr; (4) Jason Lane; (5) Dr. Espirito; and (6) Dr. Wandry (id.). Plaintiff alleged that Defendants' failure to provide treatment for his hepatitis C constituted deliberate indifference towards his serious medical needs, caused him further liver damage and health deterioration, and increased his risk for developing advanced stage hepatitis. Specifically, Count I alleged that Defendants failed to provide Plaintiff with antiviral

(interferon) treatment, and Count II alleged that the prescription of the medication Seroquel for 11 months worsened Plaintiff's hepatic impairment (Doc. #69).

## II.     Motions

### A.     Motion for Preliminary Injunction

Plaintiff moves for an preliminary injunction to provide appropriate treatment and evaluation including a liver biopsy, serum chemistries, cardiac-risk assessment, antiviral therapy and monitoring, and any other treatment deemed necessary by a hepatitis specialist (Doc. #37).  In support, Plaintiff attaches copies of (1) a June 2007 correspondence with Dora Schriro, Director of the Arizona Department of Corrections (ADC), and (2) the Federal Bureau of Prisons (BOP) Guidelines for the Prevention and Treatment of Viral Hepatitis (id., Exs. 1-2).  In the letter to Schriro, sent shortly before his transfer to the ADC, Plaintiff explained that he meets the criteria for antiviral therapy (id., Ex. 1).  And in the BOP Guidelines, Plaintiff highlighted those sections referring to evaluation and treatment.  The BOP Guidelines suggest that inmates with acute hepatitis C should be considered for antiviral therapy on a case-by-case basis and such evaluation should include consideration of the inmate's serum ALT levels,[1] renal-function assessment, various screenings, and genotype determination (id., Ex. 2 at 10-11, 13).  Plaintiff also highlighted those sections of the BOP Guidelines that set forth the pretreatment evaluation protocol, which make up the screening tests for which Plaintiff seeks an injunctive order (id. at 15-16).

In response to the Motion for Preliminary Injunction, Defendants argue that because Plaintiff is no longer housed in a county facility, his request that the county defendants be ordered to provide testing and antiviral treatment is moot (Doc. #40).

### B.     Motion to Strike Defendants' Allegation of Failure to Exhaust Remedies

In his second motion, Plaintiff asserts that he has exhausted all of the administrative remedies available at the county jail as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #38).  Plaintiff submits copies of the following grievances and appeals:

---

[1] ALT refers to alanine aminotransferase, an enzyme produced in the liver.

(1) Grievance No. 06-1285—this grievance, filed on January 18, 2006, related to pain on Plaintiff's right side and concern about the inadequate care for his hepatitis C (id., Ex. 2). Plaintiff's evidence shows that he filed an Inmate Institutional Grievance Appeal and then an appeal to the External Referee (id.).

(2) Grievance No. 06-06332—this grievance, filed on April 23, 2006, complained about further liver damage caused by the Seroquel prescribed to him (id., Ex. 3). Plaintiff's documents include both an Institutional Grievance Appeal and an appeal to the External Referee (id.).

(3) Grievance No. 05-18638—this grievance, filed on November 3, 2005, complained about improper medical treatment, including fear of contaminated needles used for blood tests, failure to address pain and swelling on his right side, and lack of antiviral treatment (id., Ex. 4). This grievance was also appealed to the Institutional Grievance Appeal level and to the External Referee (id.).

**C.     Cross-Motion to Dismiss for Failure to Exhaust Administrative Remedies**

Defendants respond to Plaintiff's motion with a cross-motion to dismiss for failure to exhaust available administrative remedies (Doc. #40). Defendants argue that Plaintiff failed to properly exhaust the administrative remedies because his grievances were untimely. The jail's grievance system provides that medical grievances must be filed within 48 hours of the incident that forms the basis of the grievance (id. at 3-4, Ex. 4 at 3). Defendants contend that Plaintiff's November 2005 grievance concerning antiviral treatment (Grievance No. 05-18638) was filed almost two years after he first requested the treatment (id. at 3). They further contend that the grievance related to Seroquel (Grievance No. 06-6332) was filed eight months after the medication was discontinued (id.).

In support of their cross-motion, Defendants submit the affidavit of Susan Fisher, a sergeant assigned to the Inmate Hearing Unit (Id., Ex. 3, Fisher Aff. ¶ 1). Fisher attests that Plaintiff filed 118 grievances during his confinement at the county jail (id. ¶ 7). Fisher confirms that Plaintiff's November 2005 grievance pertained to a request for antiviral treatment; she attests that he was first denied this treatment during his intake on December

22, 2003 (id. ¶ 8). She also confirms that the April 2006 grievance pertained to the prescription of Seroquel and complaints that it caused further damage to his liver. She states that Plaintiff first alleged severe abdominal pain from Seroquel in April 2005 (id. ¶ 9).

In addition to the nonexhaustion argument, Defendants move to dismiss on the grounds that Plaintiff cannot show physical injury entitling him to damages and that his request for injunctive relief is moot (Doc. #40 at 5-6). Defendants submit copies of medical records that they claim demonstrate low ALT levels and stable liver functioning throughout his incarceration at the jail (id., Ex. 2).

The Court issued an Order informing Plaintiff of his obligation to respond to the cross-motion and the evidence necessary to successfully rebut Defendants' contentions (Doc. #44).[2] In his response,[3] which is titled "Information in Support of Plaintiff's Allegations in the Present Complaint," Plaintiff insists that the 48-hour time-frame for filing a medical grievance is unreasonable (Doc. #45).[4] He argues that the issue to be grieved may not arise until well after 48 hours have passed. He further argues that the complete deprivation of antiviral treatment was an ongoing issue and therefore not subject to one 48-hour time-frame (id. at 2). Plaintiff requests that the Court recognize a tolling of the 48-hour period because he put off grieving his claim until mental health issues were resolved. He claims that once his mental health was improved, he made a determined effort to obtain the antiviral treatment, at which time he was denied care (id. at 2-3).

As to the grievance about Seroquel, Plaintiff contends that he grieved the issue as soon as he learned that the medication was linked to his various illnesses and was contraindicated for someone with hepatic impairment (id. at 5). Plaintiff disputes that his

---

[2] Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

[3] Plaintiff later filed a supplemental response for the purpose of proffering copies of his grievances and appeals (Doc. #51), which were already submitted with his earlier motion.

[4] Plaintiff's response included a request for the appointment of an independent hepatologist (Doc. #45); the Court denied the request (Doc. #57).

1 medical records reflect stable platelet or ALT levels; he asserts that the records show
2 persistently low platelet counts (id. at 8).

3     Plaintiff argues that the lack of antiviral therapy has caused significant physical injury
4 as evidenced by the medical records submitted by Defendants (id. at 10). He alleges he
5 experienced low ALT levels and platelet counts, stage one hypertension and high blood
6 pressure, and early indicators of cirrhosis. Also, he suffered abdominal pain and
7 gastrointestinal disorder (id.).

8     In their reply Defendants assert that Plaintiff admitted that his grievances were
9 untimely filed and that Plaintiff failed to show actual injury or evidence that Seroquel harmed
10 him (Doc. #50). Defendants further argue that antiviral treatment was unnecessary and that
11 the Federal BOP Guidelines are not applicable to Plaintiff's circumstances at the county jail
12 (id. at 4). Defendants contend that without qualified medical evidence or testimony,
13 Plaintiff's claims must fail even if the claims are not dismissed for nonexhaustion (id. at 5).
14 Finally, Defendants reiterate that Plaintiff did not allege anything more than emotional
15 injuries in his Complaint and that allegations that he *may* have suffered injury are insufficient
16 to support a claim for damages (id.).

17 **III.  Preliminary Injunction**

18     The Court will first address Plaintiff's request for a preliminary injunction. The
19 purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable
20 injury pending the resolution of the underlying claim. Sierra On-Line, Inc. v. Phoenix
21 Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). A preliminary injunction is an
22 extraordinary and drastic remedy and will not be granted absent a clear showing of likely
23 success in the underlying claim and possible irreparable injury. See Mazurek v. Armstrong,
24 520 U.S. 968, 972 (1997) (per curiam); Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th
25 Cir. 2005). Alternately, a party may show that serious questions going to the merits were
26 raised and the balance of hardships tips sharply in his favor. Warsoldier, 418 F.3d at 994.
27 These two formulations operate as points on a sliding scale, whereby a stronger showing of
28 irreparable harm can compensate for a weaker likelihood of success. See U.S. v. Nutri-

1 cology, Inc., 982 F.2d 394, 397 (9th Cir. 1992) (citing Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985)).  Under either test, the movant must demonstrate a significant threat of irreparable injury.  AGCC v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

Plaintiff is no longer housed in the jail where his claims arose and from where he filed his motion (see Doc. #42, Notice of Change of Address).  When a prisoner seeks injunctive relief concerning the facility where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions.  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  Plaintiff's transfer to the ADC effectively moots his request for injunctive relief.

Further, the Court finds that Plaintiff's general claim of "possible irreparable injury" of further liver damage and disease progression is simply too general to demonstrate a significant threat of irreparable injury (see Doc. #37 at 1).  Plaintiff's Motion for a Preliminary Injunction will therefore be denied without prejudice.

## IV.    Motion to Strike

Because the Court will consider the arguments raised by Defendants in their cross-motion (Doc. #40), including the allegations that Plaintiff failed to exhaust administrative remedies, Plaintiff's motion to strike those allegations will be denied.

## V.    Exhaustion

### A.    Legal Standard

A prisoner must first exhaust "available" administrative remedies before bringing an action.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  He must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense.  Jones v. Bock, 127 S. Ct. 910, 919-21 (2007).

1   Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315
2   F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
3   motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-
4   20. Further, a court has broad discretion as to the method to be used in resolving the factual
5   dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
6   Cir. 1988) (quotation omitted).

7   According to the documents submitted by Defendants, the jail grievance system
8   requires an inmate who wishes to file a medical grievance to submit an Inmate Grievance
9   Form to a detention officer (Doc. #40, Ex. 4 at 3). Medical grievances are forwarded to a
10  shift supervisor, who must forward them directly to the Bureau Hearing Officer (id.). The
11  Bureau Hearing Officer's response may be appealed to the charge nurse via an Inmate
12  Institutional Grievance Appeal (id. at 5). The inmate may appeal the charge nurse's decision
13  by filing an External Grievance Appeal, which is forwarded to the Contracted Health
14  Services Legal Liaison. The Legal Liaison reviews the appeal and forwards it to the External
15  Referee with a recommendation (id. at 6). The External Referee either concurs with the
16  Legal Liaison's recommendation or provides a separate written response to the appeal (id.).

17  **B.     Analysis**

18  The parties do not dispute that a grievance system was available to Plaintiff for his
19  claims in Counts I and II, and the evidence demonstrates that Plaintiff filed medical
20  grievances pertaining to his two claims and appealed those grievances through the External
21  Referee. The issue on the cross-motion to dismiss for nonexhaustion is whether Plaintiff
22  properly grieved his claims pursuant to the grievance policy's procedural rules. Defendants
23  argue that Plaintiff failed to properly exhaust because he did not comply with the procedural
24  rules requiring medical grievances to be filed within 48 hours of the event being grieved.
25  Plaintiff argues that the 48-hour time-frame requirement should not apply because his claims
26  were ongoing and such a short time-frame is unreasonable for medical claims.

27  There is only one indication that Plaintiff may not have complied with the applicable
28  time-frame for filing grievances; on Grievance No. 05-18638, which included a complaint

1   about a contaminated needle, the Bureau Hearing Officer wrote: "I/m [inmate] states 'this
2   happened a year ago.' Then I/m told it was out of time frame" (Doc. #38, Ex. 4).

3         A careful reading of Grievance No. 05-18638 reflects that on November 3, 2005,
4   Plaintiff filed three separate Inmate Grievance Forms concerning three medical issues—the
5   contaminated needle, failure to treat side pain, and failure to provide antiviral treatment (id.).
6   The three grievances were filed together and given the same grievance number. Plaintiff
7   appealed the grievances by filing three separate Inmate Institutional Grievance Appeal
8   Forms; one to address each specific medical issue raised in the Inmate Grievance Forms (id.).
9   The Bureau Hearing Officer returned the three Institutional Grievance Appeal Forms with
10  a note advising Plaintiff to re-combine the three medical issues and submit them on one
11  Institutional Grievance Appeal Form (id. at 5). Plaintiff avers that he was informed he would
12  not be penalized for resubmitting this single Institutional Grievance Appeal Form out of
13  time-frame (Doc. #38 at 2). Thus, the notation on the Inmate Grievance Form that "it was
14  out of time frame" applied only to the complaint about the contaminated needle, which is not
15  part of the present action.

16        Moreover, neither the Institutional Grievance Appeal response nor the External
17  Appeal response rejected any issue as untimely or improper under the grievance procedures.
18  Both these appeal responses directly addressed Plaintiff's contentions (id. at 2-4).[5]

19        There is nothing in the other grievances and appeals or their responses indicating that
20  they were filed untimely. In sum, at no point in the appeals process did jail officials reject
21  any of Plaintiff's grievances on procedural grounds. If Plaintiff failed to comply with the jail
22  grievance procedures, it was incumbent upon jail officials to inform Plaintiff of the
23  deficiency. See Brown, 422 F.3d at 937. The Court will not permit Defendants to go back
24  and attempt to reject, on procedural grounds, exhausted grievances. The cross-motion to
25  dismiss for nonexhaustion will be denied.

26  **VI.   Physical Injury**

27

28      [5]Even Plaintiff's complaint about the contaminated needle 12 months earlier was addressed by the External Referee (Doc. #38, Ex. 4 at 3).

**A.     Legal Standard**

Defendants' second ground for dismissal is that Plaintiff's claims are barred because he did not establish that he suffered any physical injury as a result of Defendants' alleged conduct (Doc. #40 at 5). In support of this argument, Defendants rely in part on documents, including medical records, attached to Plaintiff's preliminary injunction motion and Defendants' cross-motion (id. at 5-6). Courts have discretion to accept and consider extrinsic materials offered in connection with a motion to dismiss and thereby convert the motion to one for summary judgment, but only when a party has notice that the district court may look beyond the pleadings. Fed. R. Civ. P. 12(b)(6); see Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan, 662 F.2d 641, 645 (9th Cir. 1981). Here, Plaintiff was given notice of an enumerated Rule 12(b) motion and informed that the Court may look beyond the pleadings only on the issue of exhaustion; thus, copies of grievances and grievance appeals would be considered (Doc. #44). Plaintiff did not have the notice required under Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (*en banc*), that other evidence may be considered or that the motion could potentially be converted to one for summary judgment. As such, Defendants' argument is properly addressed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

A Rule 12(b)(6) motion tests the sufficiency of the complaint. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999); North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint or any claim within it "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, --- U.S. ----, ----, 127 S. Ct. 1955, 1965 (2007).

1    In determining whether the allegations of a complaint state a claim upon which relief 2 may be granted, the Court must take the allegations of material fact as true and construe them 3 in the light most favorable to the plaintiff. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 4 973 (9th Cir. 2004) (citations omitted). *Pro se* pleadings must be held to a less stringent 5 standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 6 (1972); Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996). The rule of liberal 7 construction of pleadings is "particularly important in civil rights cases." Ferdik v. Bonzelet, 8 963 F.2d 1258, 1261 (9th Cir. 1992).

9    **B.    Analysis**

10    The PLRA provides that "[n]o Federal civil action may be brought by a prisoner 11 confined in a jail, prison, or other correctional facility, for mental or emotional injury 12 suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). 13 Defendants argue that Plaintiff has failed to allege physical injury sufficient to bring a claim 14 for mental or emotional injury (Doc. #40 at 5). They point to Plaintiff's Second Amended 15 Complaint in which he states that he seeks "damages in the event that successful antiviral 16 therapy cannot be achieved," and they cite to Plaintiff's claim that he "has suffered 17 emotional distress and hopeless frustration" (id., referring to Doc. #69 at 7, 4I). Defendants 18 contend that these allegations represent no physical injuries at this time, and they conclude 19 that Plaintiff's claimed injuries are, at best, emotional injuries (id. at 5-6).

20    In Count I of his Second Amended Complaint, Plaintiff alleges that he suffered further 21 liver damage and, more specifically, he alleges that he endured daily internal pain in his right 22 side, swelling, nausea, and hypertension (Doc. #69 at 4, 4D). In Count II, he alleges that he 23 experienced severe abdominal pain, weight loss, tremors, and back pain (id. at 5). Both 24 counts allege violations under the Fourteenth Amendment, and Plaintiff seeks damages in his 25 request for relief. These contentions adequately allege physical injury and state a cognizable 26 claim for relief against the named Defendants. Consequently, the request to dismiss for 27 failure to allege physical injury will be denied.

28

## VII. Remaining Relief

As stated above, Plaintiff is no longer in the custody of the county, so his request for a preliminary injunction directing Defendants to provide medical testing or treatment is moot. But Plaintiff's transfer out of the jail does not moot his Fourteenth Amendment claims for damages against Defendants. To the extent that Defendants seek dismissal of the Second Amended Complaint because injunctive relief cannot be accommodated, their cross-motion will be denied.

**IT IS ORDERED**:

(1) Plaintiff's Motion for a Preliminary Injunction (Doc. #37) is **denied**.

(2) Plaintiff's Motion to Strike Defendants' Allegation of Failure to Exhaust the Administrative Remedies (Doc. #38) is **denied**.

(3) Defendants' Cross-Motion to Dismiss (Doc. #40) is **denied**.

DATED this 27th day of March, 2008.

_____
Mary H. Murgula
United States District Judge