1  **WO**                                                              JDN
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                         **FOR THE DISTRICT OF ARIZONA**
8
   Joshua DeRoche,                    )   No. CV 06-1428-PHX-MHM (MEA)
9                                      )
              Plaintiff,               )   **ORDER**
10                                     )
   vs.                                 )
11                                     )
   Lindy Funkhouse, et al.,            )
12                                     )
              Defendants.              )
13 _____)

14       Plaintiff Joshua DeRoche brought this civil rights action under 42 U.S.C. § 1983
15 against various officials at the Maricopa County Fourth Avenue Jail (Doc. #69). Before the
16 Court is Defendants' Motion for Summary Judgment (Doc. #97), which is fully briefed (Doc.
17 ##104, 108).
18       The Court will grant Defendants' motion and terminate the action.
19 **I.    Second Amended Complaint**
20       Plaintiff's claims arose during his confinement at the Maricopa County Jail between
21 December 2003 and June 2007 (Doc. #69; Doc. #97 at 3).[1] He alleged that the following
22 Defendants violated his Fourteenth Amendment rights: (1) Medical Director Jill Kennedy;
23 (2) Dr. M. Bargan; (3) Nurse Pamela Barr; (4) jail medical staff Jason Lane; and (5) Dr.
24 Espirito (Doc. #69).[2] Plaintiff alleged that Defendants' failure to provide treatment for his
25 _____
26    [1]Plaintiff is currently in custody of the Arizona Department of Corrections (ADC) and
   housed at the Arizona State Prison Complex-Lewis Morey Unit in Buckeye, Arizona (Doc.
27 #112).
28    [2]Another Defendant, Dr. Wandry, was dismissed for failure to serve (Doc. #88).

hepatitis C constituted deliberate indifference towards his serious medical needs, caused him further liver damage and health deterioration, and increased his risk for developing advanced stage hepatitis. Specifically, Count I alleged that Defendants failed to provide Plaintiff with antiviral (interferon) treatment, and Count II alleged that the prescription of the medication Seroquel from October 2004 to August 2005 worsened Plaintiff's hepatic impairment (Doc. #69).

**II.     Summary Judgment**

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

**III. Factual Background**

**A. Hepatitis C**

Plaintiff was booked into the Maricopa County Jail in December 2003 (Doc. #98, Defs.' Statement of Facts (DSOF) ¶ 1; Doc. #105, Pl.'s Statement of Facts (PSOF) ¶ 1). At the time, Plaintiff was hepatitis-C positive (DSOF ¶ 2; PSOF ¶ 2). Plaintiff states that he reported he had been hepatitis-C positive for the previous five years (PSOF ¶ 2); Defendants state that Plaintiff did not report this information (Doc. #109, Defs.' Controverting Statement of Facts (DCSF) ¶ 2). In January 2003, a liver profile (blood testing) was performed, and the profile was normal (DSOF ¶ 3).

During Plaintiff's incarceration at the jail, he received multiple liver-function tests and other studies (DSOF ¶ 4; PSOF ¶ 4). Plaintiff states that these tests revealed persistently elevated AST and ALT levels and low platelet counts (PSOF ¶ 4).[3] And he states that his decreased platelet count was out of the normal range on all tests (id. ¶ 5). Defendants dispute that the tests showed persistently elevated AST and ALT levels; they state that the changes in those tests were minimal and "below the changes warranted for consideration of interferon treatment" (DCSF ¶ 4). Defendants assert that Plaintiff's platelet count was minimally low (id. ¶ 5).

In October 2005, Plaintiff underwent a liver ultrasound, which showed some fatty infiltration but was otherwise normal (DSOF ¶ 5). Defendants state that the following month, Plaintiff underwent an abdominal x-ray, which was normal, and at that time, his liver-function tests were relatively normal with minor increases in the ALT (DSOF ¶ 6).

---

[3] ALT refers to alanine aminotransferase, and AST refers to aspartate aminotransferase; both are liver enzymes. Elevated levels of both enzymes characterize hepatic disease. Stedman's Medical Dictionary ALT, AST (27th ed.).

Defendants state that subsequent periodic testing showed stable liver function with slightly elevated ALT (id. ¶ 7).

Plaintiff requested alpha interferon treatment in November 2005 (id. ¶ 8; PSOF ¶ 22). In response to this request, his liver function was assessed and found to be relatively normal (DSOF ¶ 8). Defendants assert that given the test results and a normal ultrasound and x-rays, and due to Plaintiff's mental health issues, it was determined that he was not a candidate for interferon treatment at that time (id.). Defendants state that his medical monitoring continued (id.).

Plaintiff asserts that in July 2006, Defendants deferred a liver biopsy and evaluation for treatment to the ADC or primary care provider upon release (PSOF ¶ 28). Defendants confirm that there was a medical recommendation to monitor Plaintiff clinically but defer hepatitis C treatment to the ADC or Plaintiff's primary care provider, depending on his disposition post-trial (DCSF ¶ 28). Plaintiff later entered a plea to the charge against him and was sentenced to the ADC in June 2007 (Doc. #97 at 3).

**B.    Seroquel**

Plaintiff states that he was methamphetamine dependent and had a recent history of drug-induced psychosis; he states that no history of depression was reported (PSOF ¶ 3). Defendants state that Plaintiff had a history of methamphetamine dependence but his medical records from March 2004 indicated several months of psychosis despite no methamphetamine use at the time (DCSF ¶ 3). Defendants further state that in March 2004, Plaintiff was diagnosed with psychosis and mood disorder, and Defendants assert that Plaintiff wrote in a 2005 grievance that he was previously diagnosed with major depressive disorder and prescribed Wellbutrin (id.).

During his incarceration, Plaintiff received medication for his psychiatric conditions (DSOF ¶ 9). Defendants state that in October 2004, Plaintiff demanded that his medications be changed or he would kill himself (id. ¶ 10). Plaintiff states that at that time, he demanded Seroquel (PSOF ¶ 13). Plaintiff was then prescribed Seroquel, which he took voluntarily (id.; DSOF ¶ 10). Then, in June 2005, Plaintiff complained that the Seroquel was making

1  him sleepy, so the prescription was reduced (DSOF ¶ 11). Two months later, Plaintiff
2  complained that he was dependent upon the Seroquel, and he stopped taking it (id. ¶ 12;
3  PSOF ¶ 14). Defendants assert that he again threatened to kill himself (DSOF ¶ 12).
4  Plaintiff was switched to another medication, and shortly thereafter, he wanted to be back on
5  Seroquel (id.). Plaintiff states that in August 2005, he reported sleeplessness and severe
6  vomiting from Seroquel withdrawal, which he had not been warned about (PSOF ¶¶ 15-16).
7  Plaintiff states that detention officers, who watched Plaintiff vomit, laughed at him and made
8  mock retching noises (id. ¶ 16). Defendants state that neither the nurse who evaluated
9  Plaintiff at the time nor a detention officer on duty reported that Plaintiff vomited, and there
10 was no evidence of vomiting, such as odors or visual signs (DCSF ¶ 16).

Plaintiff states that he never reported a danger-to-self ideation and has never attempted suicide (PSOF ¶ 17). Defendants assert that Plaintiff threatened suicide a number of times (DCSF ¶ 17). Plaintiff states that his suicide statements were solely for the purpose of cell removal or attempts to get medical care (PSOF ¶ 18). Defendants state that jail officials took Plaintiff's threats seriously (DCSF ¶ 18). Plaintiff states that in October 2005, the Arizona Superior Court found Plaintiff to be malingering and cognitively intact and competent to stand trial (PSOF ¶ 20). Defendants do not dispute that the superior court found Plaintiff competent to stand trial; however, they assert that Plaintiff nonetheless had psychiatric problems (DCSF ¶ 20).

**IV.  Parties' Contentions**

    **A.  Defendants' Motion**

Defendants seek summary judgment on the grounds that (1) Plaintiff cannot demonstrate a constitutional violation, (2) the claims against Defendants in their official capacity are unfounded, (3) Plaintiff cannot show physical injury as required under the Prison Litigation Reform Act (PLRA), and (4) service of process as to Bargan, Barr, and Lane is insufficient (Doc. #97). Their motion is supported by a separate Statement of Facts (Doc. #98), copies of Plaintiff's superior court proceedings (id., Ex. 1), copies of Plaintiff's medical records (id., Ex. 2), a copy of a memorandum from Risk Management regarding Plaintiff's

medical care complaints (id., Ex. 3), a copy of Plaintiff's response to Defendants' Request for Admission (id., Ex. 4), copies of service of process receipts (id., Ex. 5), copies of Defendant Maricopa County's Initial Disclosure Statement and Supplemental Disclosure Statement (id., Ex. 6), and a copy of Defendants' expert witness report (id., Ex. 6, Attach.).

### *1. Constitutional Violation*

Defendants argue that Plaintiff has failed to show that they were deliberately indifferent to his serious medical needs (id. at 4). They note that to comport with due process, they "need only 'exercise judgment that is not substantially below the standards generally accepted in the medical community'" (id., citing Jensen v. Land County, 312 F.3d 1145, 1147 (9th Cir. 2002)). Defendants maintain that Plaintiff's medical records demonstrate that jail officials and healthcare providers were not deliberately indifferent to Plaintiff's medical conditions (id. at 4). They note that Plaintiff was seen dozens of time for various medical conditions and complaints; he received x-rays, lab tests, EKGs, and diagnostic analysis; and his liver condition was monitored with multiple liver-function tests (id. at 5). Defendants assert that this treatment may not have been the treatment Plaintiff wanted; however, such a disagreement does not support a constitutional claim (id.).

In further support, Defendants submit the report of Richard Manch, M.D., Director of the Liver Disease Center at Banner Good Samaritan Hospital and Clinical Professor of Medicine for the University of Arizona (Doc. #98, Ex. 6, Attach.). Upon review of Plaintiff's medical records, Manch provides his expert opinion that the jail healthcare providers involved in Plaintiff's care properly monitored his condition and complied with the applicable standard of care (id. at 1). Manch states that Plaintiff's liver biopsy showed him at grade 2 and stage 0 (id.). According to Manch, the "stage" is the more important indicator when making treatment decisions and that interferon treatment is not mandated by the standard of care for those patients at stage 0 (id. at 1-2). Manch explains that under the state AHCCCS program,[4] a patient should be at stage 2 to be eligible for interferon treatment (id.

---

[4]AHCCCS refers to the Arizona Health Care Cost Containment System, Arizona's Medicaid agency.

at 2). Manch describes Plaintiff's case of hepatitis C as very mild during his time at the jail (id.). He also states that interferon treatment consists of weekly injections for 6 months, 4 pills per day, and monthly blood checks, and that once started, treatment should not be interrupted (id.). Manch adds that because Plaintiff had a history of depression, which is a "relative contrindication to interferon treatment," he would have to be prescribed an antidepressant and monitored by a psychiatrist because depression is a side effect of the treatment (id.).

With respect to Seroquel, Manch states that the medication was not contraindicated for a patient like Plaintiff (id.). According to Manch, Seroquel is contraindicated in patients with impaired liver function because the drug is metabolized by the liver and an impaired liver may not properly metabolize it, which would result in higher levels of Seroquel in the blood stream (id.). Manch explains that Seroquel itself does not cause liver impairment (id.). Manch states that because Plaintiff did not have impaired liver function, Seroquel was acceptable and there is no indication that he was unable to properly metabolize it or that his use of the drug compromised his medical condition (id.).

Defendants contend that because Plaintiff's claims are based on a difference of opinion regarding the proper course of treatment and because he submits no expert testimony or evidence to show that the decisions made by the jail violated the standard of care, summary judgment should be granted on both claims (Doc. #97 at 6).

### 2. *Official Capacity Claims*

Defendants next argue that Plaintiff's claims against them in their official capacity are unfounded (id.). They assert that Plaintiff did not allege that the claimed violations resulted from an official policy or custom (id. at 7). They further assert that Plaintiff has not alleged or demonstrated that any named Defendant had policy-making authority, which would allow for official-capacity liability (id. at 6-7). Defendants conclude that absent any policy-related allegations, summary judgment should be granted on the official-capacity claims.

### 3. *De Minimis Physical Injury*

1       Defendants contend that Plaintiff has not established that he suffered a physical injury as required under the PLRA (id. at 7).⁵ They point to his allegations of injury, which include "emotional distress and hopeless frustration," and his concern that he was denied the most effective treatment for his hepatitis C (id.). As to Plaintiff's allegations of pain, Defendants argue that there is no evidence to show that his pain was related to hepatitis C (id.). They assert that Plaintiff has no physical damages and makes no showing that he will suffer damages in the future (id. at 8).

      Defendants further contend that there is no evidence that use of Seroquel caused any liver damage (id.). They maintain that the evidence shows that his liver function remained stable through his incarceration. Defendants argue that because Plaintiff has suffered no more that *de minimis* physical injury, summary judgment is warranted (id.).

### *4. Service of Process*

      Lastly, Defendants assert that Bargan, Barr, and Lane have not been served (id.). Defendants insist that the claims against them must therefore be dismissed (id.).

### **B.**     **Plaintiff's Response**⁶

      Plaintiff opposes summary judgment and argues that there exist genuine issues of material fact warranting trial (Doc. #104). In support of his opposition, Plaintiff submits a separate Statement of Facts (Doc. #105), copies of superior court records (Doc. #106, Ex. 1-A), a copy of his health appraisal by the jail on December 23, 2003 (id., Ex. 1-B), an excerpt from the Federal Bureau of Prisons Clinical Practice Guidelines (id., Exs. 2-A, 3-A, 4-A), copies of his medical records (id., Exs. 2-B, 2-C, 3-C, 4-C, 4-D), copies of records related to Plaintiff's competency proceedings in superior court (id., Ex. 2-D and 2-E), an excerpt from Plaintiff's supplemental memorandum supporting a preliminary injunctive

---

⁵42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

⁶The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #99).

request (id., Ex. 2-F), copies of Plaintiff's psychiatric evaluation and the state statute regarding insanity (id., Ex. 2-H and 2-I), copies of correspondence with parties working on Hart v. Hill, now Graves v. Arpaio, CV 77-0479-PHX-NVW, (id., Ex. 2-J), copies of grievances and related memorandums (id., Ex. 3-B, 4-B), copies of ADC grievances (id., Ex. 4-E), and Plaintiff's affidavit (Doc. #107).

### *1. Constitutional Violation*

Plaintiff submits that Defendants falsely reported that his platelet count was stable and that he was not a candidate for interferon treatment (Doc. #104 at 2). Plaintiff states that Defendants admitted that the jail does not provide hepatitis C treatment unless an inmate was receiving such treatment before arrest (id.). He argues that as a result, he was denied treatment and in January 2008, a hospital physician noted that Plaintiff may already be cirrhotic (id.; Doc. #106, Ex. 4-D). Plaintiff asserts that this blanket policy to deny initiation of interferon treatment led to his liver deterioration and violated his rights (Doc. #104 at 8).

Plaintiff contends that psychiatric illness is not an absolute contraindication to interferon treatment, and he notes that neither the jail's medical personnel nor the superior court evaluator considered him to be seriously mental ill or suffering from a psychotic disorder (id. at 3).

Plaintiff further contends that Defendants' "excuses" for denying interferon treatment lack validity and are untrue; specifically, their claims that Plaintiff has mental health issues and that his platelet counts were only minimally low (id. at 4, 9). Plaintiff asserts that Defendants failed to perform a liver re-biopsy and that they maintain substandard medical policies that conflict with Federal Clinical Practice Guidelines (id.). Plaintiff states that liver biopsies should be performed every 2-5 years, and he notes that in 2008, the ADC authorized a liver re-biopsy for him because his original biopsy was over 5 years old (id. at 5).

Plaintiff maintains that he suffered from a serious medical need, and he argues that his low platelet counts constituted an obvious risk to his health that Defendants disregarded in denying him interferon treatment (id. at 6-7). He also states that other factors made him a candidate for treatment; his age, race, sex, and genotype put him at a 76-82% probability

1  for achieving a "sustained virologic response" (id. at 9). Plaintiff suggests that at the least,
2  an outside physician would have performed a timely liver re-biopsy (id.).

3  Lastly, with respect to whether there was deliberate indifference to his health needs,
4  Plaintiff states that the jail's unwritten policies—like the practice of not initiating any
5  hepatitis C treatment—led to recent revisions in medical standards at the county jail pursuant
6  to Graves v. Arpaio, CV 07-0479-PHX-NVW (id.). Plaintiff avers that he assisted the
7  plaintiffs' counsel with the medical care claims in Graves (Doc. #105, PSOF ¶ 30).

### *2. De Minimis Physical Injury*

9  Plaintiff argues that Defendants' "proof" of no physical injury is due to their own
10 failure to perform a liver re-biopsy (id.). He maintains that his low platelet counts, various
11 symptoms, and daily pain are injuries that support a finding of deliberate indifference (id.).

12 Plaintiff did not address Defendants' official-capacity claim or lack of service
13 arguments.

### C. Defendants' Reply

15 In reply, Defendants contend that many of Plaintiff's facts are unsupported and that
16 his response memorandum consists of sweeping generalizations but lacks any evidence
17 showing deliberate indifference to a serious medical need (Doc. #108).

18 Defendants argue that Plaintiff has failed to show how any of the named Defendants
19 violated his rights with respect to the treatment of his hepatitis C (id. at 4). They rely on the
20 medical records, which show that Espiritu evaluated Plaintiff for right-sided pain in
21 September 2005, contacted the Florida Department of Corrections to obtain prior health
22 information on Plaintiff, and ordered an ultrasound for further evaluation (id. & Ex. C). They
23 state that Plaintiff's ultrasound reflected some fatty infiltration of the liver but no gross
24 abnormalities or cirrhosis (id.). Espiritu did not see Plaintiff again until April 2006, at which
25 time he discussed lab results and advised Plaintiff and planned to recheck his hepatic profile
26 and do a blood count in three months; these tests were done in August 2006 (id.).

27 Defendants assert that this evidence demonstrates no deliberate indifference on
28 Espiritu's part—the only named Defendant authorized to make medical determinations—or

1  on the part of any other Defendant (id. at 5). As to Plaintiff's evidence that in 2008, a report
2  indicated that there may be some evidence of cirrhosis, Defendants note that there is no
3  evidence that there was in fact cirrhosis and, nonetheless, that information was not available
4  to Defendants at the time they treated Plaintiff (id. at 5 n. 3). Defendants further assert that
5  the federal guidelines submitted by Plaintiff are not related to county jails nor do they
6  establish the applicable standard of care (id. at 6). They argue that Manch's report and
7  opinion are clear evidence that the care for Plaintiff's hepatitis C was well within the
8  standard of care in the medical community (id.). Finally, in response to Plaintiff's claim that
9  there is a blanket policy to deny initiation of interferon treatment at the jail, Defendants
10 contend that Plaintiff proffers no evidence of a policy, and he has not sued the county (id. at
11 6 n. 4). And they add that Plaintiff's own evidence shows that he has not been deemed to be
12 a candidate for interferon treatment by the ADC (id.).

13 As to the Seroquel, Defendants note that Plaintiff concedes that he demanded the
14 medication and that the records show he was prescribed the drug for psychosis and
15 depression from October 2004 to August 2005 (id. at 2-3). Defendants argue that none of
16 the named Defendants are mentioned in the medical records as being involved in the decision
17 to put Plaintiff on Seroquel, maintain his prescription, or discontinue it (id. at 3). Defendants
18 assert that decision to prescribe Seroquel was made by a psychiatric healthcare provider (id.
19 & Ex. C). Defendants argue that medical records show 24 interactions between Plaintiff and
20 other providers, none of whom include Defendants (id.). Thus, Defendants insist that they
21 were not responsible for prescribing Seroquel and did not disregard a serious risk to
22 Plaintiff's health connected to the medication (id.). And they point out that Plaintiff merely
23 alleges that Seroquel "may" have caused liver impairment but proffers no evidence to support
24 this allegation. Defendants reassert they have uncontradicted expert testimony that Seroquel
25 does not cause liver impairment (id.).

26 Defendants reassert that Plaintiff failed to serve a number of the Defendants;
27 therefore, claims against them cannot survive (id. at 7). And they note that Plaintiff did not
28 address their argument that the official-capacity claims are insufficient (id. at 7-8).

## V. Analysis

### A. Legal Standard

As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due Process Clause, which establishes that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). The Fourteenth Amendment standard is more protective than the Eighth Amendment; "[t]his standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." Id.; Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). Although a pretrial detainee's right to receive adequate medical care derives from the Due Process Clause of the Fourteenth Amendment, Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)), it is difficult to apply the "punishment" standard to medical care claims in the same manner it is applied to conditions-of-confinement claims. See Pierce, 526 F.3d at 1206-1213 (addressing detainees' claims regarding reading materials, telephone access, holding cells, exercise, and other conditions at the county's jail facilities). Under the Due Process Clause, however, a detainee is protected against conditions or conduct—including conduct related to medical treatment—that is arbitrary or purposeless. See id. at 1205 (if a particular condition or restriction is arbitrary or purposeless, a court may infer that the purpose of the action is punishment that may not be inflicted on pretrial detainees) (citing Bell, 441 U.S. at 539).

At a minimum, the Due Process Clause imposes the same duty to provide adequate medical care to those incarcerated as imposed by the Eighth Amendment. Gibson, 290 F.3d at 1187. Therefore, the Eighth Amendment standards governing medical care may be applied. See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) ("the eighth amendment guarantees provide a minimum standard of care for determining [the plaintiff's] rights as a pretrial detainee, including his right to medical care"). The Ninth Circuit has emphasized, however, that although courts

borrow the Eighth Amendment standard in pretrial detainee cases, "that amendment establishes only 'a *minimum standard of care*.'" Conn v. City of Reno, 572 F.3d 1047, 1054 (9th Cir. July 24, 2009) (citing Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003) (emphasis in original).

To establish a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This requires the plaintiff to satisfy both the objective and subjective components of a two-part test. Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). First, he must demonstrate that he suffered a serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the plaintiff must show that the defendant's response to that serious medical need was deliberately indifferent. Id. "[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104-05. An official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Although mere negligence or medical malpractice does not establish a sufficiently culpable state of mind, Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980), a prisoner does not have to prove that he was completely denied medical care in order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000). Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides care. Jett, 439 F.3d at 1096. A delay in treatment, however, only violates the Eighth Amendment if the delay was harmful. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

**B.  Constitutional Violation**

At the onset, the Court notes that Defendants do not dispute that Plaintiff's hepatitis C condition constitutes a serious medical need, thereby satisfying the objective component in the deliberate-indifference analysis.

1  To support their claim for summary judgment as to the subjective component, Defendants present evidence to show that there was no deliberate indifference to Plaintiff's condition. The evidence includes medical records documenting continuous treatment for Plaintiff's hepatitis C, including blood tests for a liver profile within a month after his arrival at the jail (Doc. #98, DSOF ¶ 3 & Ex. 2 (page 91)), multiple liver-function tests (id. 4 & Ex. 2 (pages 91-113)), a liver ultrasound and an abdominal x-ray in October-November 2005 (id. 5-6 & Ex. 2 (page 116)), and subsequent testing and monitoring from February-April, August-September, and November-December 2006 (id. 7 & Ex. 2 (pages 103-114)). The evidence also shows that Defendants responded to Plaintiff's request for interferon treatment in November 2005 by assessing his liver function and reviewing his tests and x-rays, from which it was determined that he was not a candidate for the treatment (id. 8 & Ex. 2).

Defendants submit records demonstrating that Plaintiff's mental health needs were treated throughout his jail confinement (id. 9 & Ex. 2 (pages 1-81)). The evidence shows that Plaintiff was prescribed psychiatric medication and that when he become dissatisfied with the medication's efficacy, he was given Seroquel (id. 9 & Ex. 2 (page 31)). According to the medical records, he took Seroquel for almost a year, at which time he became concerned about dependency on the drug (id. 12 & Ex. 2 (page 57)). The evidence reflects that jail medical personnel responded to Plaintiff's concern and switched him to another psychiatric medication (id. & Ex. 2 (pages 57-58)).

Finally, Defendants proffer the report from a medical expert who reviewed Plaintiff's medical records and found that the care he received was within the appropriate standard of care (id., Ex. 6, Attach.). Manch opines that many healthcare providers would not and do not provide treatment to patients who have no fibrosis, which was Plaintiff's status at the time (id. at 2). Manch also reports that Seroquel is properly used in patients like Plaintiff, who do not have impaired liver function (id.). Manch states that there was no evidence in the records that Plaintiff was unable to metabolize the Seroquel or that the medication compromised his condition in any way (id.).

On this record, Defendants have met their initial burden to present the basis of their motion and identify portions of the record that show an absence of a genuine issue of material fact. The burden now shifts to Plaintiff to present specific facts that a genuine issue of material fact related to his hepatitis C treatment exists. Fed. R. Civ. P. 56(e).

Plaintiff has failed to meet this burden. He does not dispute the evidence showing he received continuous treatment and monitoring, including lab tests, an ultrasound, and an abdominal x-ray. Nor does he dispute that Defendants considered his 2005 request for interferon treatment. Instead, he disputes Defendants' interpretation of some of his test results (Doc. #105, PSOF ¶¶ 4-5). He submits copies of his test results and argues that his AST and ALT levels are elevated and his platelet counts are low; he maintains that this evinces that he should have received treatment (id. 4; Doc. #106, Ex. 3-C). But Plaintiff does not provide any medical expert testimony or evidence to support his claim that these tests indicated a need for interferon. His reliance on a 2008 medical record, which states that "[h]is low platelet count may indicate that he is already cirrhotic from the hepatitis C," is not evidence of what his condition was during the time he was confined at the jail, and it does not confirm that he is in fact cirrhotic (id., Ex. 4-D).

Likewise, Plaintiff's records and grievances from the ADC are not evidence of his condition during his jail incarceration. The excerpts from the federal guidelines consist of general information about hepatitis C and are not specific to Plaintiff's condition at the relevant time. Indeed, the federal guidelines include information that mental illness or signs of mental illness require careful assessment, evaluation, and stabilization before any antiviral therapy (id., Ex. 2-A). Thus, this evidence supports Defendants' consideration of Plaintiff's mental status in their determination to deny interferon (see Doc. #98, Ex. 6, Attach. at 2).

Plaintiff did not support his claim that taking Seroquel from August 2004 to October 2005 aggravated his hepatitis C condition. Instead, his response memorandum focuses on Defendants' failure to warn him of potential withdrawal effects from discontinuation of the medication (Doc. #104 at 3). This claim differs from that set out in his Second Amended Complaint. Regardless, Plaintiff fails to submit any evidence supporting his original claim

1   that Seroquel worsened his hepatic impairment, and his new allegations—that unidentified
2   detention officers laughed at him when he was suffering withdrawal—are insufficient to state
3   a constitutional claim.

4   To the extent that Plaintiff relies on the findings by the federal court in Graves v.
5   Arpaio, those findings are not relevant. The Graves Findings of Fact and Conclusions of
6   Law specified that its findings relate only to the jail conditions during the evidentiary period
7   from July 1, 2007 through May 31, 2008. Graves, Doc. #1634 at 5-6, CV 77-0479-PHX-
8   NVW (D. Ariz. Oct 22, 2008). Thus, the Findings of Fact do not constitute evidence of
9   medical care at the jail during Plaintiff's confinement from December 2003 to June 2007 (see
10  Doc. #98, DSOF ¶ 1; Doc. #97 at 3).

11  In sum, Plaintiff's claim boils down to a dispute over the best course of treatment for
12  his hepatitis C. A showing of nothing more than a difference of medical opinion as to the
13  need to pursue one course of treatment over another is generally insufficient to establish
14  deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004); Sanchez
15  v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail on a claim involving choices between
16  alternative courses of treatment, Plaintiff must show that the course of treatment Defendants
17  chose was medically unacceptable under the circumstances and that they chose this course
18  in conscious disregard of an excessive risk to Plaintiff's health. Toguchi, 391 F.3d at 1058;
19  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Here, there is no evidence that the
20  treatment provided by Defendants was medically unacceptable; rather, the uncontested
21  evidence shows the opposite. Plaintiff's claims that Defendants denied him proper treatment
22  and deferred treatment for non-medical or financial reasons are simply too general to defeat
23  summary judgment. Bare allegations unsupported by any factual data do not give rise to a
24  genuine dispute of material fact. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir.
25  1993); see also Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir. 1988) (where the
26  plaintiff contests the type of treatment he received, expert opinion will almost always be
27  necessary to establish the necessary level of deliberate indifference).

On this record, there exists no material factual dispute whether Defendants acted with deliberate indifference in treating Plaintiff's hepatitis C condition or prescribing Seroquel. Summary judgment will therefore be granted to Defendants. The Court need not address Defendants' arguments regarding official-capacity liability, the physical-injury requirement, or lack of service.

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. #97).

(2) Defendants' Motion for Summary Judgment (Doc. #97) is **granted.**

(3) The Clerk of Court must dismiss the Second Amended Complaint and enter judgment accordingly.

DATED this 21st day of September, 2009.

_____
Mary H. Murguia
United States District Judge